IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EDGAR ANTONIO MONTOYA GARCIA, § <br> and all others similarly situated under § <br> 29 U.S.C. § 216(b), § <br>       Plaintiff, § <br> § <br> v. § <br> § <br> OVERNIGHT CLEANSE, LLC, GESU § <br> RESTAURANT GROUP, INC. also d/b/a § <br> GESU RESTAURANT GROUP LLC, § <br> SUNU SAMUEL a/k/a SUNNY SAMUEL, § <br> JOSEFINA MURILLO, and § <br> ALEJANDRO MURILLO, § <br>       Defendants. § | | Civil Action No. 3:18-CV-3386-S-BH <br><br><br><br><br> Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court is *Plaintiff's Motion for Entry of Default by the Clerk and Motion for Final Default Judgment*, filed July 17, 2020 (doc. 36). Based on the relevant filings and applicable law, the motion for default judgment should be **GRANTED in part**.

**I. BACKGROUND**

On December 21, 2018, Edgar Antonio Montoya Garcia (Plaintiff) filed this suit under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-216 *et seq.*, against his former employers,[2] including Gesu Restaurant Group, Inc. d/b/a Gesu Restaurant Group LLC (Gesu) and Sunu Samuel a/k/a Sunny Samuel (Samuel) (collectively Defendants). (*See* doc. 1.)[3]

---

[1] By electronic order referring case, filed March 13, 2019, this case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] The other defendants that Plaintiff sued have responded to the lawsuit. (*See* docs. 10, 29.)

[3] Plaintiff filed this as a collective action under the FLSA on behalf of himself and all other similarly situated employees of the defendants, but it has not been conditionally certified as a collective action.

From on or about July 2014 through on or about March 2017, Plaintiff was employed by Defendants working at a Goodfellas pizza restaurant as a cook, prepper, and dish washer. (doc. 28 at 3-4, 6; doc. 36-1 at 1.)[4] He contends that Gesu "was the FLSA employer" and "had gross sales or business done in excess of $500,000.00 annually," and that Samuel was "a corporate officer and/or owner and/or manager of [Gesu] who ran the day-to-day operations of [Gesu] during [his] employment with same and was responsible for paying [his] wages during [his employment] and controlled [his] work schedule." (doc. 28 at 2, 4-5.) He alleges that his work for Defendants "affected interstate commerce for the relevant time period because the materials and goods that [he] used on a constant and/or continual basis and/or that were supplied to him by [them] to use on the job moved through interstate commerce prior to and/or subsequent to [his] use of the same." (*Id.* at 4.) He also claims that Defendants' business affected interstate commerce because they "regularly employed two or more employees for the relevant time period who handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce." (*Id.* at 4-5.) Specifically, Gesu "operated multiple 'Goodfellas' pizza restaurants throughout the period of Plaintiff's employment . . . and the employees at those restaurants regularly handled goods and materials such as meats, produce, cheeses, flour, ovens, firewood, soft drink, alcoholic beverages such as tequila, vodka, beer, and whiskey, and other kitchen appliances and utensils that . . . travelled through interstate commerce prior to their use by such employees." (*Id.* at 5.)

Plaintiff alleges that when he worked for Defendants, his "regular work schedule was from 9:00 a.m. to 2:00 a.m. Monday through Saturday, with an hour off for lunch[,] and on Sundays three

---

[4]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

weeks per month from 4:00 p.m. to 2:00 a.m. without lunch, for an average of 80 hours per week." (doc. 38-1 at 2.) Between July 2014 and December 2016, except for the periods from July through September 2015, January through February 2016, and July through September 2016, he "worked an average of 88 hours per week" and "was paid an average hourly rate of $10.50 per hour, but was not paid the extra half-time rate for all hours worked above 40 hours in a week." (doc. 28 at 6.) Between December 2016 and March 2017, he "worked an average of 80 hours per week" and "was paid an average salary of $1,600.00 every two weeks, resulting in an average effective hourly rate of $10.00 per hour, but was not paid the extra half-time rate for all hours worked above 40 hours in a week." (*Id.*) He alleges that Defendants' refusal to pay his overtime wages was willful and intentional, they were aware of the FLSA and recklessly failed to investigate whether their payroll practices complied with the statute, and they "remain owing [him] these wages from the commencement of [his] employment for the time period specified above." (*Id.* at 6-7.)

Summonses were issued for Defendants on December 21, 2018, the day this action was filed, and Plaintiff properly served them both in January 2019. (docs. 4-6.) He filed an amended complaint on October 29, 2019, and after Defendants failed to answer or respond, he sought and obtained entry of default on July 17, 2020. (docs. 28, 36, 37.)

Plaintiff now seeks entry of final default judgment against Defendants for actual and liquidated damages in the amount of either $15,200.00, or $46,000.00, depending on the applicable statute of limitations, as well as attorney's fees and costs. (doc. 36 at 2, 5-8.) His declaration states that his average effective hourly rate of pay was $10.00 during his employment by Defendants, and he worked an average of 80 hours per week for 38 weeks from December 21, 2015 to March 1, 2017, but was not paid the extra half-time overtime rate for the hours above 40 hours in a week and

3

is owed $15,200.00 for total unpaid half-time wages and liquidated damages for this period. (doc. 36-1 at 2.) He worked an average of 80 hours per week for 115 weeks from July 1, 2014 to March 1, 2017, but was not paid the extra half-time overtime rate for the hours above 40 hours and is owed $46,000.00 for total unpaid half-time wages and liquidated damages for this period. (*Id.* at 3.)

## II. MOTION FOR DEFAULT JUDGMENT

Plaintiff moves for default judgment under Rule 55 of the Federal Rules of Civil Procedure. (doc. 36.)

Rule 55 sets forth the conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. There is a three-step process for securing a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered when the default is established "by affidavit or otherwise." *See id.*; *New York Life Ins. Co.*, 84 F.3d at 141. Third, a party may apply to the clerk or the court for a default judgment after entry of default. Fed. R. Civ. P. 55(b); *New York Life Ins. Co.*, 84 F.3d at 141. Here, because Defendants have failed to plead or otherwise defend, and Plaintiff has obtained an entry of default against them, the first two requisites for a default judgment have been met. (docs. 5, 6, 37.)

"'Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). Moreover, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)

4

(per curiam)). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Only well-pleaded facts, not conclusions of law, are presumed to be true. *Id.* Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger–Silas Mason Co., Inc. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984) (per curiam).

The decision to enter a judgment by default is discretionary. *Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *11 (N.D. Tex. Mar. 25, 2004). "Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). In determining whether the entry of a default judgment is appropriate, courts look to whether default judgment is procedurally warranted, whether the plaintiff's complaint provides a sufficient factual basis for the plaintiff's claim for relief, and whether the requested relief is appropriate. *See J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (citing *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

**A.     Procedural Requirements**

Courts consider numerous factors in deciding whether to grant a motion for default judgment. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685 (3d ed. 1998). The applicable factors include: (1) the amount of money involved; (2) whether there are material issues of fact or issues of substantial

5

public importance at stake; (3) whether the default is technical in nature; (4) the extent of prejudice to the plaintiff due to the delay; (5) whether the grounds for default are clearly established; (6) the harsh effect of a default judgment; (7) whether the default resulted from a good faith mistake or excusable neglect on the defendant's part; (8) whether the plaintiff's actions contributed to delay; and (9) whether the court would be obligated to set aside the default on motion by the defendant. *Id.*; *see Lindsey*, 161 F.3d at 893 (citing 10A WRIGHT, MILLER, KANE & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685); *Stelax Indus., Ltd.*, 2004 WL 733844, at *11 (same).

Under the first factor, the total amount Plaintiff requests (either $15,200.00, or $46,000.00) could be considered substantial, but that "is not dispositive." *US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-CV-01541-M-BH, 2016 WL 3752964, at *3 (N.D. Tex. June 17, 2016), *adopted by* 2016 WL 3766362 (N.D. Tex. July 11, 2016). Regarding the second factor, there are no material issues of fact in dispute as Defendants have failed to file any responsive pleadings in this case.[5] *See Nishimatsu Constr. Co.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Although the default appears to be technical in nature (third factor), Plaintiff is prejudiced and harmed by the continued delay in this case, which is the fourth factor. *See United States v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (holding that a plaintiff's interests were prejudiced because the defendant's failure to respond brought the adversary process to a halt). Under the fifth and sixth factors, the grounds for default are clearly established, and a default judgment is not unusually harsh under these facts given that Defendants have received ample notice of this action and sufficient time to respond. *See*

---

[5]Plaintiff's declaration states that Samuel is over eighteen years old and is not incompetent, and that there is no indication that Samuel is in the military service but Plaintiff is "'unable to determine' otherwise pursuant to the Service Member's Civil Relief Act." (doc. 36-1 at 1.)

6

*Lindsey*, 161 F.3d at 893; *see also J & J Sports Prods.*, 126 F. Supp. 3d at 814 ("Defendants' failure to respond to Plaintiff's Complaint or otherwise appear in this case for the past ten months 'mitigat[es] the harshness of a default judgment.'") (citations omitted). The seventh, eighth, and ninth factors similarly favor default judgment because Defendants have not offered any evidence that their failure to answer was the product of a good faith mistake or excuse, Plaintiff has not contributed to the delay in this case, and there does not appear to be any basis upon which the Court would be obligated to set aside the default. *See Lindsey*, 161 F.3d at 893.

Because Defendants were properly served in this action and failed to answer or otherwise defend themselves, the grounds for default judgment are clearly established. (*See* docs. 5, 6.) Accordingly, the procedural prerequisites for a default judgment are satisfied. *See Ramsey*, 2016 WL 1701966, at *3.

**B.     Entitlement to Judgment**

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016). In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

7

(2009)). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id.* at 498. Recognizing that "a defendant must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Id.* at 498 n.3.

Plaintiff alleges that Defendants "willfully and intentionally refused to pay [his] overtime wages" in violation of the FLSA. (*See* doc. 28 at 3-7.) The FLSA requires that employers pay covered employees at a rate of at least one and one-half times their regular rate for the hours an employee works in excess of a forty-hour workweek. *See* 29 U.S.C. § 207(a)(1). To state a claim for unpaid overtime wages under the FLSA, a plaintiff must allege facts sufficient to show: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e). An "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). The Fifth Circuit has explained that the "remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (citations omitted). "To determine whether a person or corporation is an employer under the FLSA, courts in the Fifth Circuit examine the totality of the employment relationship in light of 'economic realities.'" *Ho v. Xpress Pho, LLC*, No. 3:14-CV-0533-B, 2015 WL 1810339, at *3 (N.D. Tex. Apr. 20, 2015) (citing *Williams v. Henagan*, 595 F.3d 610, 620 (5th

8

Cir. 2010)). "The 'economic reality' test includes inquiries into whether the alleged employer (1) has the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990). "Under the economic reality test, a corporate officer may be an employer within the meaning of the FLSA (and thus jointly and severally liable along with the corporation) if he or she exercises "'managerial responsibilities' and 'substantial control of the terms and conditions of the [employer's] work.'" *Ho*, 2015 WL 1810339, at *3 (citing *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971-72 (5th Cir. 1984)).

Here, Plaintiff's allegations that he worked for Defendants from July 2014 to March 2017, that Gesu was the FLSA employer, and that Samuel was a corporate officer, owner and/or manager who ran Gesu's day-to-day operations and was responsible for his paying wages and controlled Plaintiff's work schedule are sufficient to establish that Gesu and Samuel were joint employers under the FLSA. *See Watson*, 909 F.2d at 1553. He has alleged sufficient facts to demonstrate an employer-employee relationship under the FLSA.

An employee is covered by the overtime provisions of the FLSA when he is "engaged in the production of goods for commerce ('individual coverage') *or* employed in an enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citation omitted and emphasis original); *see also* 29 U.S.C. § 207(a)(1).[6] "*Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Id.* (emphasis original). In determining individual coverage, courts in the Fifth Circuit apply a "practical test," which asks "whether [an employee's] work is so directly and vitally related to the

---

[6]"Commerce" under the FLSA is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

9

functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam).  "As to enterprise coverage, the FLSA defines an enterprise as one that 'has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.'" *Melendez v. DJJRN, Inc.*, No. 3:20-CV-102-S-BK, 2020 WL 7774940, at *3 (N.D. Tex. Nov. 16, 2020), *adopted by* 2020 WL 7771203 (N.D. Tex. Dec. 30, 2020) (quoting 29 U.S.C. § 203(s)(1)(A)(i)-(ii)).

      Here, Plaintiff alleges that Defendants regularly employed two or more employees who "handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce." (doc. 28 at 5.)  He also alleges that Gesu had annual gross sales or business of $500,000, and operated multiple pizza restaurants with employees who "regularly handled goods and materials such as meats, produce, cheeses, flour, ovens, firewood, soft drink, alcoholic beverages such as tequila, vodka, beer, and whiskey, and other kitchen appliances and utensils that . . . travelled through interstate commerce prior to their use by such employees." (*Id.* at 4-5.)  He has alleged sufficient facts to establish enterprise coverage under the FLSA. *See* 29 U.S.C. § 203(s)(1)(A).

      Plaintiff also alleges that when he worked for Defendants between July 2014 and March 2017, his average hourly rate was between $10.00 and $10.50, and the average number of hours he worked per week was between 80 and 88 hours, but he "was not paid the extra half-time rate for all hours worked above 40 hours in a week." (doc. 28 at 6.)  He claims that Defendants "willfully and

intentionally refused to pay" his overtime wages, had knowledge of the FLSA but failed to investigate whether their payroll practices complied with it, and remain liable for his earned and uncompensated overtime. (*Id.* at 6-7.)

Based on these allegations and his evidence, Plaintiff has established that Defendants willfully violated the FLSA and is entitled to default judgment on his claims for unpaid overtime wages under the FLSA.

C. **Entitlement to Damages**

Plaintiff's motion for default judgment seeks to recover unpaid overtime and liquidated damages of $15,200.00 or $46,000.00, depending on the applicable statute of limitations, from Defendants. (doc. 36 at 6.) It also seeks attorney's fees and costs. (*Id.* at 8.)

In awarding relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The relief requested in a plaintiff's complaint limits the relief available in a default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n. 3 (5th Cir. 1975). Damages on a default judgment are normally not awarded without a hearing or a demonstration by detailed affidavits; a hearing is unnecessary, however, if the amount of damages can be determined with a mathematical calculation by reference to the pleadings and supporting documents. *See James*, 6 F.3d at 310. The plaintiff has the burden to provide an evidentiary basis for the damages it seeks. *Broadcast Music, Inc. v. Bostock Billiards & Bar Assoc.*, No. 3:12-CV-413-B, 2013 WL 12126268, at *3 (N.D. Tex. Jan. 18, 2013). Because the requested relief does not differ in kind from, or exceed in amount, what is demanded in the pleadings, remaining for determination is whether the relief requested is appropriate based on governing law. *Chevron Intellectual Property, LLC v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D.

11

Tex. Aug. 24, 2009).

An employer who violates the overtime provisions of § 207 of the FLSA is liable to the affected employee for unpaid overtime compensation, as well as liquidated damages equal to the amount of unpaid wages for willful violations of the statute. *See* 29 U.S.C. § 216(b). "Under the FLSA, a district court may not exercise its discretionary authority to reduce or to eliminate a liquidated damages award unless the employer first sustains its burden of showing that its failure to obey the statute was in good faith." *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999). "[T]he FLSA is subject to a strict two-year statute of limitations, unless the cause of action arises out of a willful violation of the FLSA, in which case the limitations period is three years." *Bell v. Able Sec. & Investigations Inc.*, No. 3:10-CV-1945-L, 2011 WL 2550846, at *2 (N.D. Tex. June 28, 2011) (citing 29 U.S.C. § 255(a)).

Here, Plaintiff filed this lawsuit on December 21, 2018. (*See* doc. 1.) As discussed, he alleges that Defendants "willfully and intentionally refused to pay [his] overtime wages" for the time he was employed between July 2014 and March 2017. (doc. 28 at 6.) Although the allegations establish willful violations of the FLSA, he is limited to compensation from December 21, 2015, or three years from the date the lawsuit was filed, and onward. *See* 29 U.S.C. § 255(a). Plaintiff may therefore recover only on unpaid overtime wages earned for the 38 weeks he worked for Defendants from December 21, 2015 until March 1, 2017. *See Bell*, 2011 WL 2550846, at *2 (entering default judgment in FLSA action but applying statute of limitations and limiting damages award to three-year period for willful violation); *Luster v. Desoto Kwik Kar, Inc.*, No. 3:13-CV-0940-B, 2013 WL 6164294, at *3 (N.D. Tex. Nov. 20, 2013) (finding three-year statute of limitations for willful violations applied to plaintiff moving for default judgment on claims for unpaid wages).

12

Plaintiff's supporting declaration states that when he worked for Defendants, his hourly rate of pay was $10.00, and his regular work schedule was from 9:00 a.m. to 2:00 a.m. Monday through Saturday, with an hour off for lunch, and three Sundays per month from 4:00 p.m. to 2:00 a.m. without lunch, for an average of 80 hours per week. (doc. 38-1 at 2.) From December 21, 2015 to March 1, 2017, he worked an average of 80 hours per week for 38 weeks but was not paid the extra half-time overtime rate for the hours in a week above 40. (*Id.*) He claims Defendants owe him $7,600.00 in unpaid overtime wages, calculated by multiplying 40 hours (the average number of uncompensated overtime hours per week) by $5.00 (the hourly half-time pay of his average pay rate of $10.00) by 38 weeks (the number of weeks of uncompensated overtime worked), as well as $7,600.00 in liquidated damages. (*Id.*)

Where, as here, Defendants have failed to participate in the case and are likely in possession of the payroll and personnel records necessary to calculate an employee's damages with certainty, courts have found similar declarations by plaintiffs in FLSA actions sufficient proof to establish their damages for uncompensated overtime. *See Gomez v. Managing Innovation & Tech., Inc.*, No. 3:14-CV-0936-M, 2015 WL 6150905, at *2 (N.D. Tex. Oct. 15, 2015) (accepting plaintiff's declarations to establish damages); *Henderson v. Fenwick Protective Inc.*, No. 3:14-CV-505-M-BN, 2015 WL 9582755, at *5 (N.D. Tex. Nov. 23, 2015), *adopted by* 2015 WL 9582147 (N.D. Tex. Dec. 28, 2015) (concluding that plaintiffs' declarations were sufficient proof of their damages); *Melendez v. DJJRN, Inc.*, No. 3:20-CV-102-S-BK, 2020 WL 7774940, at *4 (N.D. Tex. Nov. 16, 2020), *adopted by* 2020 WL 7771203 (N.D. Tex. Dec. 30, 2020) (same). Additionally, because Plaintiff sufficiently alleged his entitlement to unliquidated damages, and because Defendants have not responded or sustained their burden of showing good faith despite violating the FLSA, he should

also be awarded liquidated damages. *See Nero*, 167 F.3d at 928; *see also Sanchez v. Maddies Mayhem, LLC*, No. 419CV00574SDJCAN, 2020 WL 4808604, at *6 (E.D. Tex. July 27, 2020), *adopted by* 2020 WL 4785046 (E.D. Tex. Aug. 18, 2020) ("An award of liquidated damages is mandatory when a defendant fails to plead and prove good faith.").

Because Plaintiff's total unpaid overtime wages and liquidated damages are capable of mathematical calculation, the amount of judgment can be reliably computed from the record and without a hearing. *See* Fed. R. Civ. P. 55(b)(2) ("*If*, in order to enable the court to enter judgment . . . it is necessary to take an account or to determine the amount of damages . . . the court *may* conduct such hearings or order such references as it deems necessary and proper . . .) (emphasis added); *see also James*, 6 F.3d at 310 (stating that the court relied on affidavits, documentary evidence, and the judge's personal knowledge of the record). Based on the record, Plaintiff has shown that he is entitled to $7,600.00 in unpaid overtime wages and $7,600.00 in liquidated damages. Accordingly, Plaintiff should be awarded his compensatory and liquidated damages, and Defendants, jointly and severally, should be ordered to pay the total amount of $15,200.00 in compensatory and liquidated damages to Plaintiff.[7]

### III. RECOMMENDATION

Plaintiff's motion for default judgment should be **GRANTED in part**, and he should recover from and against Samuel and Gesu, jointly and severally, the amount of $15,200.00 (consisting of unpaid overtime wages of $7,600.00 and liquidated damages of $7,600.00).

---

[7]Plaintiff also requests attorney's fees and costs to be "made by separate motion." (doc. 36 at 8.) "The FLSA authorizes a prevailing party in an FLSA proceeding to recover costs and attorney's fees, and the award of attorney's fees in such a proceeding is mandatory." *Bell*, 2011 WL 2550846, at *3 (citing 29 U.S.C. § 216(b)). Plaintiff may therefore file a post-judgment request for attorney's fees and costs under Federal Rule of Civil Procedure 54(d)(2) that also complies with the applicable Local Rules for the Northern District of Texas.

**SO RECOMMENDED** on this 22nd day of January, 2021.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F. 3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE